# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERT L. TATUM,**

    Petitioner,

    v.                                               Case No. 21-CV-804

**DYLON RADTKE,**

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR
## WRIT OF HABEAS CORPUS AND MOTIONS FOR SANCTIONS

Robert L. Tatum, who is currently incarcerated at Green Bay Correctional Institution, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Tatum was convicted of first-degree intentional homicide with use of a deadly weapon and sentenced to life imprisonment without parole. (Habeas Petition, Docket # 1 at 5.) Tatum alleges that his custody is unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed. Furthermore, Tatum's motions for sanctions (Docket # 23 and 24) will also be denied.

## BACKGROUND

This case has a long history dating back over a decade. On May 27, 2010, the State of Wisconsin charged Tatum with two counts of first-degree intentional homicide for the shooting deaths of his two former housemates. (Wis. Ct. App. Decision, Docket # 14-2 ¶ 3.) Tatum filed his first demand for a speedy trial on November 5, 2010, and his trial commenced on April 4, 2011. (*Id.*) On April 7, 2011, a jury found Tatum guilty of both charges. (*Id.*)

Tatum pursued a direct appeal *pro se*, where he argued that his statutory right to a speedy trial and constitutional right to self-representation were both violated. (*Id.* ¶ 4.) The Wisconsin Court of Appeals affirmed his convictions on January 29, 2013, *see State v. Tatum* (*Tatum I*), No. 2011AP2439-CR, unpublished slip op. (WI App. Jan. 29, 2013), and the Wisconsin Supreme Court denied his petition for review on August 1, 2013, *see State v. Tatum* (*Tatum II*), No. 2011AP2439-CR, unpublished order (WI Aug. 1, 2013). Tatum then petitioned this court for a writ of habeas corpus, but the court denied his petition, concluding that the Wisconsin trial court correctly applied Wisconsin law and that Tatum's claim that he suffered a violation of the statutory right to a speedy trial was not cognizable in federal court. *See Tatum v. Meisner* (*Tatum III*), No. 13-CV-1348, 2014WL4748901, at *1 (E.D. Wis. Sept. 24, 2014). However, on January 31, 2017, the Seventh Circuit issued an opinion agreeing with Tatum that the Wisconsin trial court had denied him his constitutional right to represent himself. *See Tatum v. Foster* (*Tatum IV*), 847 F.3d 459 (7th Cir. 2017). On May 30, 2017, the state filed a petition for a writ of certiorari in the United States Supreme Court, and the Supreme Court denied the petition on October 16, 2017. (Docket # 14-2 ¶ 7.)

After the Supreme Court denied the state's petition for a writ of certiorari, the Seventh Circuit reissued its mandate, and on October 25, 2017, the Wisconsin trial court scheduled a hearing thereby initiating steps to retry Tatum. (*Id.*) At the November 13, 2017 hearing, the trial court vacated Tatum's 2011 homicide convictions and entered his demand for a speedy trial. (*Id.*)

Shortly after the November 13, 2017 hearing, Tatum filed a proposed witness list that included the judge who presided at his 2011 trial, the assistant district attorney who handled the prosecution in that trial, and the court reporters who transcribed the proceedings. (*Id.* ¶

2

8.) The state moved to exclude those witnesses as well as several others that Tatum wished to call, including a detective involved in investigating the case and a psychologist who examined Tatum in custody. (*Id.*) Following a hearing on the state's motion, the circuit court granted the state's motion to bar testimony from the judge who presided at Tatum's first homicide trial, the assistant district attorney who conducted the prosecution, and the court reporters who transcribed the testimony, but it permitted testimony from the psychologist that Tatum said would testify about allegedly inaccurate entries in the records maintained by the Department of Corrections. (*Id.* ¶¶ 9–10.)

Tatum's retrial began on January 29, 2018. (*Id.* ¶ 11.) Tatum represented himself with the assistance of standby counsel. (*Id.*) The jury heard testimony from Tatum's former roommates who placed Tatum at the residence on the night of the shooting. (*Id.*) Tatum's brother, Dwight Tatum, testified that he did not recall giving a statement to police a few days after the homicides; however, the state presented a recording of his statement. (*Id.* ¶ 14.) In his statement, Dwight claimed that he had spoken with Tatum shortly after the homicides and that Tatum said he "did it," that "God told him to do it," that the Quran compels killing one's "open enemies," and that the shooting victims were Tatum's "open enemies." (*Id.*) Another of Tatum's brothers, Warren Nelson, described how Tatum admitted to him and his father that he shot both victims, that "a force told him to do it," and that he killed one of the victims by "a shotgun blast to the head." (*Id.*) Additionally, one of Tatum's fellow inmates, Alfonzo Treadwell, testified that while both men were in jail, Tatum admitted to committing two homicides by shooting the victims with a shotgun. (*Id.*) Detective Daniel Goldberg testified that law enforcement discovered shotgun shells at the crime scene. (*Id.* ¶ 13.)

On cross-examination, Detective Goldberg testified that he only vaguely recalled interviewing an inmate named Jeffrey McCord. (*Id.* ¶ 13.) Tatum then sought to confront the detective with a recording that Tatum alleged revealed that Goldberg showed something to McCord during the custodial interview to assist him in fabricating evidence against Tatum. (*Id.*) The state objected to the recording, and the circuit court, after listening to the recording outside the presence of the jury, found that the person was McCord's own attorney and disallowed the recording as evidence. (*Id.*)

Tatum then testified in his own defense, stating that he had watched a movie with the victims on the afternoon of the homicides, left the residence when he was asked to move his truck, and went to his mother' home, where he watched a movie with his brother Eris Tatum and spent the night. (*Id.* ¶ 16.) Tatum additionally told the jury that the state had fabricated evidence against him, testifying that while he was in jail, he heard that other inmates were falsely claiming that he had conversations with them about his case. (*Id.* ¶ 17.)

Tatum called several police witnesses, including Detective James Hensley, who explicitly denied that he had tampered with any inmates' statements (*id.* ¶ 18); Detective Goldberg, who again testified that Tatum told him in an interview following the homicides that he slept in a vacant house that night rather than at his mother's home as he testified (*id.* ¶ 19); and Detective James Hutchinson, who had discovered from cell phone records that Tatum had used his own phone to call his mother's residence during a time that he claimed to have been inside that residence (*id.* ¶ 20). Finally, Tatum called one of the informant-inmates who admitted that he had testified against Tatum at a prior proceeding but denied that the police gave him information to assist him in fabricating testimony. (*Id.* ¶ 21.)

4

The jury found Tatum guilty of both homicide charges (*id.* ¶ 22), and the circuit court sentenced Tatum to consecutive life sentences without eligibility for release on extended supervision (J. of Conviction, Docket # 14-1 at 2.). Tatum appealed, contending that he suffered violations of his rights to a speedy trial and to present a defense. (Docket # 14-2 at 2.) The Wisconsin Court of Appeals rejected both arguments, holding that: (1) "Tatum did not suffer a violation of his constitutional right to a speedy trial"; (2) Tatum's claim for relief under Wis. Stat. § 971.10 was moot because "the only remedy for a violation of that statute is release from either pretrial custody or from the conditions of bond pending trial"; and (3) the "trial court protected Tatum's constitutional rights and properly exercised its discretion" when it "prevented him from presenting some witnesses that he wished to call because he failed to show that they had relevant evidence to offer and because any theoretical relevance was substantially outweighed by countervailing considerations of unnecessary delay, confusion of the jury, and waste of time." (*Id.* ¶¶ 15–16, 21.) The Wisconsin Supreme Court denied Tatum's petition for review. (Order of Wis. Sup. Ct., Docket # 14-3.) Tatum timely filed his habeas petition in this court on June 30, 2021. (Docket # 1.)

## STANDARD OF REVIEW

Tatum's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The Seventh Circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the Seventh Circuit explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine

that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

A habeas petitioner must clear two procedural hurdles before the federal court may reach the merits of the habeas corpus petition: exhaustion of remedies and procedural default. *Bolton v. Akpore*, 730 F.3d 685, 694–96 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claims through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *Fieldman v. Butler*, No. 15-cv-1389-NJR, 2019 U.S. Dist. LEXIS 51834, at *31 (S.D. Ill. Mar. 27, 2019) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

## ANALYSIS

Tatum raises three grounds for relief in his habeas petition: (1) that the state violated his constitutional right to a speedy trial; (2) that the state violated his due process rights when it arbitrarily denied him his "state-created liberty interest" in a speedy trial; and (3) that the state violated his constitutional right to present a complete defense. I will address each ground in turn.[1]

---

[1] Tatum also filed two sanctions motions. The first motion requests sanctions against Respondent Dylon Radtke and Assistant Attorney General John W. Kellis, alleging that a letter (Docket # 19) responding to Tatum's motion for a judgment on the pleadings (Docket # 17) is an improper "sur-rebuttal" that is not "justified by law and facts, and is motivated by the purpose of delay and harassment." (Docket # 23.) The second motion again requests sanctions against Radtke and Kellis, alleging "uninvestigated and improper denials of clearly true facts (alleged in Docket # 1), denied in Docket # 14." (Docket # 24.) Finding no grounds for sanctions, I deny both motions.

7

### 1. Constitutional Right to a Speedy Trial

Tatum argues that he was denied his constitutional right to a speedy trial. (Pet'r's Br., Docket #2 at 2.) To prevail on habeas review, Tatum must show that the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. In this case, the state court identified the correct Supreme Court decision regarding speedy trial issues. The court of appeals cited *State v. Williams*, 2004 WI App 56, ¶ 32, 270 Wis. 2d 761, 677 N.W.2d 691, which in turn cites the four-factor balancing test established by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). (Docket # 14-2 at 10.) Thus, the question is whether the Wisconsin Court of Appeals unreasonably applied the applicable law or unreasonably determined the facts when it disposed of Tatum's speedy trial claim. *West v. Symdon*, 689 F.3d 749, 751 (7th Cir. 2012).

To determine whether a defendant's constitutional right to a speedy trial has been violated, the court must consider four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker*, 407 U.S. at 530. These are not factors "that may be ticked off mechanically; instead, the Supreme Court has indicated that the *Barker* test involves a 'difficult and sensitive balancing process.'" *West*, 689 F.3d at 751 (citing *Barker*, 407 U.S. at 533). Regarding the last factor, prejudice to the defendant, courts are to consider those interests that the constitutional right to a speedy trial is designed to protect—preventing oppressive pretrial incarceration; minimizing anxiety and concern of the accused; and limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. Of these, the most serious is the third "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

In *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992), the Supreme Court noted that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." However, "presumptive prejudice" does not necessarily indicate a "statistical probability of prejudice"; rather, "it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id.*

Here, in addressing the first factor, the length of the delay, the court of appeals noted, consistent with Supreme Court precedent, that the right to a speedy trial "protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial." (Docket # 14-2 ¶ 26 (citing *Betterman v. Montana*, 578 U.S. 437, 439 (2016)).) In other words, the right to a speedy trial "detaches upon conviction." (*Id.* (citing *Betterman*, 578 U.S. at 441).) Since Tatum's speedy trial right had already detached upon his first conviction, the court of appeals did not consider the time between Tatum's arrest and his first trial or the time periods that Tatum spent pursuing an appeal of his convictions in the state courts and pursuing a writ of habeas corpus in the federal courts in assessing the delay in starting his second trial. (*Id.* ¶ 27.)

Tatum argues that a delay due to a defendant's appeal is relevant to the speedy trial analysis, citing to *United States v. Loud Hawk*, 474 U.S. 302 (1986). (Docket #2 at 3.) Tatum further argues that the court of appeals was incorrect in disregarding *Loud Hawk* and instead relying on *Betterman* in its analysis, asserting that "*Betterman*'s facts are not similar to mine, so the state violated SCOTUS standards . . . that a state cannot misapply a governing legal principle with a set of facts different than the one the principle was announced in." (*Id.*)

However, the court of appeals was reasonable in distinguishing *Loud Hawk*, which involved an interlocutory appeal, whereas Tatum was pursuing postconviction relief. (Docket

9

# 14-2 at 12.) Unlike Tatum's postconviction appeals and collateral attacks, the defendants' appeals in *Loud Hawk* preceded any conviction, and the delay thus occurred while the right to a speedy trial remained attached. (*Id.*)

Further, Tatum misapplies the holdings of *Brown v. Payton*, 544 U.S. 133 (2005) and *Wiggins v. Smith*, 539 U.S. 510 (2003) in challenging the court of appeals' reliance on *Betterman*. In both *Brown* and *Wiggins*, the Court reiterates that the "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. *Wiggins*, 539 U.S. at 520; *see also Brown*, 544 U.S. at 141. "In other words, a federal court may grant relief when a state court has *misapplied* a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins*, 539 at 520 (emphasis added) (internal citation omitted).

Here, the court of appeals did not misapply a governing legal principle from *Betterman* to Tatum's case. *Betterman* states that "[a]dverse consequences of postconviction delay . . . [fall] outside the purview of the Speedy Trial Clause." 578 U.S. at 444. As such, the court of appeals' conclusion that the delay occasioned by Tatum's postconviction appeal is irrelevant to a speedy trial analysis was not an unreasonable application of the Court's precedent. (Docket # 14-2 at 13.)

Moreover, the court of appeals stated that "were we to equate the conditional issuance of a writ of habeas corpus on January 31, 2017, with reversal of a conviction—and we do not—we would nonetheless conclude that Tatum did not suffer a violation of his right to a speedy trial." (*Id.*) This is because the period between the Seventh Circuit's decision on

10

January 31, 2017 and the start of Tatum's trial on January 29, 2018 is less than the one-year threshold necessary to give rise to a presumption of prejudice. *See Doggett*, 505 U.S. at 652 n.1. Thus, the court of appeals did not unreasonably apply the first *Barker* factor.

As to the second *Barker* factor, the court of appeals' analysis of the reasons for the delay was not unreasonable. *Barker* states that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while "[a] more neutral reason . . . should be weighted less heavily" and "a valid reason . . . should serve to justify appropriate delay." 407 U.S. at 531. Tatum asserts that the reason for delay is "largely attributable to the [S]tate" because "[i]t held a constitutionally deficient trial, clearly violating [Sixth Amendment] rights in a manner no reasonable jurist could agree with, yet [it] refused to correct the violation on every state court level, then appealed the [Seventh] Circuit's reversal despite the frivolousness of [its] position." (Docket # 2 at 4.) However, the court of appeals found that a significant portion of the delay was not attributable to the state because the state proceeded reasonably in asking the United States Supreme Court for review, and many of the gaps of time, particularly the time between the Supreme Court denying certiorari review and the Wisconsin trial court vacating Tatum's convictions, were intrinsic to the litigation. (Docket #14-2 ¶ 36.) As such, the court of appeals' assessment was not an unreasonable application of *Barker*.

Finally, as to the other two factors, the Court in *Barker* states that the length of the delay acts as a "triggering mechanism" because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530. Because the court of appeals aptly found that the length of

delay was not extraordinary and the delay was not largely attributable to the state, it was reasonable for the court of appeals to not consider the remaining *Barker* factors. (*Id.*)

In balancing the *Barker* factors, the court of appeals found that Tatum's constitutional right to a speedy trial was not violated. (*Id.*) The delay in Tatum's case did not exceed one year and the delay was not largely attributable to the state. (*Id.*) Further, the court of appeals was not required to consider the other two factors given that it appropriately found there was no unjustified delay. (*Id.*) As such, Tatum has not shown that the court of appeals unreasonably applied *Barker* in reaching this conclusion, and he is not entitled to habeas relief on this ground.

    2.    *State-Created Liberty Interest*

Tatum argues that his custody violates the Fourteenth Amendment because the state "arbitrarily denied the substantial liberty of release afforded by [Wis. Stat. § 971.10] despite mandatory language and without affording minimal due process." (Docket # 2 at 5.) Tatum further argues that "the afforded remedy of release for [Wis. Stat. § 971.10] itself violates the *Barker* line of cases holding the only remedy for a [Speedy Trial] violation is dismissal." (*Id.*) The court of appeals rejected Tatum's claim, finding that "the only remedy for a violation of that statute is release from either pretrial custody or from the conditions of bond pending trial," so any right that Tatum had to pretrial release was "moot" since he had already had his trial. (Docket # 14-2 ¶ 37.)

Tatum's claim of a Wis. Stat. § 971.10 violation only constitutes a matter of state law and is thus not cognizable ground for federal habeas review. *Huusko v. Jenkins*, 556 F.3d 633, 637 (7th Cir. 2009) ("[A] federal court cannot issue a writ of habeas corpus that rests on a belief that a state court has misunderstood or misapplied state law."). Tatum alleges that the

Wisconsin speedy trial violation escalated to a constitutional due process violation because state statutes with some bearing on liberty that contain the words "shall" or "must" give defendants a due process right and, pursuant to *Barker*, any state statute that provides a speedy trial right other than case dismissal violates the Sixth Amendment. (Docket #2 at 5.) But Tatum failed to raise his constitutional claim in state court and thus failed to exhaust the claim. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (discussing how exhaustion of state remedies is only viable if the state courts had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding). As such, Tatum is not entitled to habeas relief on this ground.

### 3. *Constitutional Right to Present a Complete Defense*

At trial, Tatum proposed to call as witnesses the judge who presided at his 2011 trial, the assistant district attorney who handled the prosecution in that trial, and the court reporters who transcribed the proceedings. (Docket # 14-2 ¶ 8.) Tatum also sought to present a recording of the police's jailhouse interview of inmate Jeffrey McCord to prove Tatum's theory that the police assisted the witness in fabricating statements. (*Id.* ¶ 13.) Tatum sought to present these witnesses as evidence of "outrageous government conduct," namely that "state actors assisted in getting knowingly false 'confessions' into trial for use as state's evidence, then manipulated to cover it up." (Docket # 2 at 7.) The trial court excluded these witnesses, concluding that Tatum failed to show either that these witnesses would give the testimony he expected or that they had relevant evidence to offer. (Docket # 14-2 ¶¶ 10, 13.) Tatum argues that this violated his right to present his complete defense. (Docket # 2 at 6.) Tatum further argues that the state court's rulings "likely hurt [his] total defense by making

13

[him] look incredible to the jury" and "made the evidence insufficient to give any reasonable juror doubt as to the credibility of the state's case and evidence." (*Id.* at 6–7.)

The Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683 (1986) (quoting *California* v. *Trombetta*, 467 U.S. 479, 485 (1984)), meaning a defendant has a right to "a fair opportunity to defend against the state's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). This right to present a complete defense is "rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment." *Crane*, 476 U.S. at 690 (internal citations omitted). However, this right is not absolute and does not permit criminal defendants to admit any and all evidence. "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). The Constitution provides trial judges with "wide latitude" in making these evidentiary decisions. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Tatum has not shown that the court of appeals' finding that the trial court "protected Tatum's constitutional rights and properly exercised its discretion" was contrary to, or involved an unreasonable application of, clearly established federal law. (Docket # 14-2 ¶ 49.) The court of appeals dismissed Tatum's argument that the trial court limited him to presenting only his own testimony, finding that Tatum was allowed to call several detectives to testify about the investigation and a former inmate who Tatum examined at length about the statement he gave to police regarding Tatum's alleged confession. (*Id.* ¶ 41.)

14

The court of appeals also dismissed Tatum's challenges to the propriety of the trial court's rulings to bar some evidence that Tatum sought to present. (*Id.* ¶ 40.) The court of appeals found that the trial court was acting within its "broad discretion to admit or exclude evidence" when it prohibited Tatum from presenting: (1) the recording of the jailhouse interview that police conducted with the inmate Jeffrey McCord to prove Tatum's theory that the police assisted the witness in fabricating statements; (2) testimony from the judge who presided over his 2011 trial regarding errors the judge allegedly made in admitting evidence; (3) testimony from the prosecutor who handled the 2011 trial to show that the prosecutor knew that statements from various witnesses were inconsistent; and (4) testimony of the court reporters who transcribed the 2011 trial to show that the court reporters fabricated the transcripts. (*Id.* ¶¶ 43–48.) The court of appeals found that Tatum failed to show that: (1) the recording's relevance outweighed "considerations of confusion and waste of time"; (2) his initial trial judge had relevant evidence to offer; (3) any dangers of confusing or misleading the jury about Tatum's prior trial would be substantially outweighed by the relevance of the prosecutor's testimony; and (4) he had an adequate basis to support his belief that the court reporters would testify to the supposed errors in the prior trial transcripts. (*Id.*) As such, the court of appeals' application of federal precedent to the facts of Tatum's case was not objectively unreasonable, and Tatum is not entitled to habeas relief on this ground.

## CONCLUSION

To obtain habeas relief, Tatum must show that the state court's decision was contrary to, or an unreasonable application of, federal law. The state court's determination that Tatum's right to a speedy trial was not violated was not contrary to or an unreasonable interpretation of *Barker* because the delay in Tatum's case was not lengthy enough to be

presumptively prejudicial and much of the delay was intrinsic to the litigation rather than attributable to the state. Tatum is not entitled to habeas relief for his state-created liberty interest claim because he failed to present the constitutional issue to the state court. Finally, the state court's determination that Tatum's right to present a defense was not violated was not unreasonable under federal law because trial courts have wide latitude to exclude evidence where the probative value does not outweigh the risk of prejudice.

Because Tatum's petition does not present any basis for relief under 28 U.S.C. § 2254, the petition is denied, and the case is dismissed.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4).

Jurists of reason would not find it debatable that Tatum is not entitled to habeas relief. Thus, I will deny Tatum a certificate of appealability. Of course, Tatum retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Tatum's petition for a writ of habeas corpus (Docket # 1) is **DENIED**, and this action is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FURTHER, IT IS ORDERED** that Tatum's motions for sanctions (Docket # 23 and 24) are **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of February 2023.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge